[Cite as *Bear v. Troyer*, 2016-Ohio-3363.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

RICHARD G. BEAR

      Plaintiff-Appellee

-vs-

MARCIA TROYER, ET AL.

      Defendants-Appellants

JUDGES:
Hon. W. Scott Gwin, P.J.
Hon. William B. Hoffman, J.
Hon. Craig R. Baldwin, J.

Case No. 15 CA 17, 15 CA 24

O P I N I O N

CHARACTER OF PROCEEDING:      Appeal from the Guernsey County Common Pleas Court, Case No. 13 CV 497

JUDGMENT:      15 CA 000017 - Affirmed in part, and
                       Vacated in part
      15 CA 000024 - Affirmed

DATE OF JUDGMENT ENTRY:      June 8, 2016

APPEARANCES:

For Plaintiff-Appellee

STEPHEN E. CHAPPELEAR
ASHLEY L. OLIKER
Frost Brown Todd LLC
10 West Broad Street, Suite 2300
Columbus, Ohio 43215

For Defendants-Appellants

RALPH F. DUBLIKAR
ANDREA K. ZIARKO
Baker, Dublikar, Beck,
Wiley & Mathews
400 South Main Street
North Canton, Ohio 44720

*Hoffman, J.*

{¶1} In Guernsey App. No. 15 CA 000017, defendants-appellants Barbara Douthitt, et al. ("the Cousins") appeal the May 13, 2015 Findings of Fact/Conclusions of Law/Judgment Entry entered by the Guernsey County Court of Common Pleas, which granted judgment in favor of plaintiff-appellee Richard G. Bear ("Bear"), following a bench trial. The Cousins also appeal the trial court's September 2, 2015 Findings of Fact/Conclusions of Law/Judgment Entry, which granted attorney fees in favor of Bear. In Guernsey App. No. 15 CA 000024, Bear appeals the September 2, 2015 Findings of Fact/Conclusions of Law/Judgment Entry relative to the amount of attorney fees the trial court awarded him.

STATEMENT OF THE CASE AND FACTS

{¶2} On October 28, 2013, Bear filed a complaint, seeking declaratory judgment and asserting claims for adverse possession and acquiescence. Bear also sought the imposition of a constructive trust as well as punitive damages and attorney fees. The Cousins filed a timely answer, raising the statute of frauds as an affirmative defense. The parties conducted discovery. Bear filed a motion for partial summary judgment, which the trial court denied via Entry filed June 24, 2014.

{¶3} The matter proceeded to bench trial on April 27, 2015, and April 30, 2015.

{¶4} On or about January 8, 1901, and September 22, 1917, Richey S. Bear, the parties' grandfather, acquired ownership of an 86 acre tract of land located in Monroe Township, Guernsey County, Ohio ("the Farm"). Upon Richey S. Bear's death, his interest in the Farm passed in equal shares to his four sons: Richie Francis Bear, Bear's father; Byron W. Bear; Floyd Ed Bear; and Iradell W. Bear, the Cousins' father. When

Richie Francis Bear died, his one-fourth interest in the Farm passed in equal shares to his five children, including Bear. Following his death in January, 1990, Iradell W. Bear's one-fourth interest passed to his widow, Charlene Bear, the Cousins' mother.

{¶5} On October 26, 1990, Bear met with Charlene Bear at her home to discuss his purchasing her one-fourth interest in the Farm. Bear's first wife, Barbara, who is now deceased, wrote a check paid to the order of Charlene Bear in the amount of $8,600.00, from her and Bear's joint checking account. Bear presented the check, which included the property's real estate tax parcel number in the subject line, to Charlene Bear. Cynthia Bear Bixler, one of Charlene Bear's five daughters, was present during the meeting. She confirmed Charlene Bear's receipt of the check, and added Charlene Bear had made a lemon pie which they ate. The $8,600.00 amount was based upon an appraisal conducted at that time. A copy of the appraisal which is dated October 5, 1997, was admitted into evidence.

{¶6} Bear provided the trial court with a photocopy of the front of the check. In addition, Bear provided the trial court with a carbon copy of the check and the checking account register which shows the check number (294), the date written (10/26), the transaction description (Charlene Bear – farm land), the amount of the check ($8600) as well as the deduction from the account balance. The register also shows dates and amounts of subsequently written checks and the running balance of the account.

{¶7} On March 17, 1993, Charlene Bear met with Attorney Thomas E. Miller to discuss estate planning options. In a letter dated the same day, Attorney Miller summarized the alternatives which had been discussed regarding Charlene Bear's

property. The summary letter is devoid of any mention of a share of the Farm as an asset to be divided among her children.

{¶8} Charlene Bear passed away on March 15, 2003. Charlene's daughters, Cynthia Bear Bixler and Appellant Barbara Douthitt, were co-executors of her estate. They contacted Attorney Douglas Frautschy to assist with some of the estate matters. When asked about Charlene Bear's assets, Bear Bixler and Appellant Douthitt indicated the only real property Charlene Bear owned was a life estate in her residence in Tuscarawas County. Neither daughter mentioned Charlene Bear having a share in the Farm. Cynthia Bear Bixler had a power of attorney for Charlene Bear. Appellant Barbara Douthitt was unaware of this arrangement. Of her daughters, Charlene Bear relied most upon Cynthia Bear Bixler for assistance with her business affairs.

{¶9} The Cousins presented evidence Myron Bear, the son of Floyd Bear, previously offered Iradell Bear $10,000, for his share of the Farm. Iradell Bear declined the offer. The evidence revealed the Cousins had not visited the Farm since the early 1980s except for Appellant Douthitt who was at the Farm in 2000, when she and her husband had taken a motorcycle ride in the area. In addition, the evidence established Charlene Bear seldom visited the Farm.

{¶10} In 2013, Bear met with Attorney David B. Bennett to address the title defect in the interest in the Farm he purchased from Charlene Bear. Attorney Bennett determined Iradell Bear's interest in the Farm was never conveyed to his widow, Charlene Bear, following his death. Further, a deed evidencing the conveyance of Charlene Bear's interest in the Farm to Bear was never prepared or recorded. In order to correct these omissions, Attorney Bennett reopened Iradell Bear's estate and conveyed his interest in

the Farm to Charlene Bear. Attorney Bennett then reopened Charlene Bear's estate and conveyed her interest in the Farm to her five children in equal shares. As the final step, Attorney Bennett prepared five quitclaim deeds for each of Charlene Bear's children to execute in order to convey the interest in the Farm to Bear.

{¶11} Two of Charlene Bear's children, Cynthia Bear Bixler and Deanna Bear, signed the quitclaim deed. The other three daughters, the Cousins herein, refused and instead chose to contact Attorney Brett Hillyer and the law firm of Connolly, Hillyer, Lindsay & Ong, Inc. ("CHLO"). Bear subsequently retained Attorney Stephen Chappelear and the law firm of Frost, Brown Todd, who specialize in real estate litigation. Attorney Chappelear sent correspondence dated September 16, 2013, to Attorney Hillyer. Therein, Attorney Chappelear set forth the evidence establishing Bear's ownership of the property, and advised Attorney Hillyer the Cousins had two weeks in which to sign the quitclaim deed or he would commence litigation.

{¶12} After ignoring the two week deadline, Attorney Hillyer sent correspondence dated October 13, 2013, to Attorneys Bennett and Chappelear, which reads, in relevant part:

> "I have recently met with my clients regarding the letter you sent asking for their signatures on a Quit Claim Deed. As of now, my clients do not believe that their ancestors would have sold the ground.
>
> Apparently, you had a conversation with my uncle, Attorney Brad Hillyer about signing a Quit Claim Deed. Either you or Attorney Bennett stated that this [sic] not about mineral rights. If it is not about mineral rights, my clients will be happy to sign over their ¼ interest in the real estate.

If this is about mineral rights, my clients will not be signing any documents at this time unless you can furnish a writing that shows that the real estate was transferred.

Please contact me if you have any further information."

**{¶13}** This correspondence prompted Bear to file his Complaint on October 28, 2013.

**{¶14}** After hearing two days of testimony, the trial court issued Findings of Fact/Conclusions of Law/Judgment Entry on May 13, 2015, granting Bear's request for declaratory judgment. The trial court determined Bear owned all of Charlene Bear's interest in the Farm and the Cousins did not own any interest in the subject property. The trial court filed a nunc pro tunc entry on August 10, 2015, clarifying the trial court's original decision.

**{¶15}** The Cousins filed a timely Notice of Appeal on June 12, 2015. On the same day, Bear filed a motion for attorney fees pursuant to Civ. R. 11 and R.C. 2323.51. This Court remanded the matter to the trial court to address the issue of attorney fees. Via Entry filed July 29, 2015, the trial court granted Bear's motion for attorney fees. This Court again remanded the matter for the trial court to determine the amount of fees.

**{¶16}** Upon remand, the trial court conducted an evidentiary hearing on August 28, 2015, to decide the reasonableness and necessity of the attorney fees requested by Bear. At the hearing, Bear argued the $135,081, in attorney fees, and $2,884.32, in expenses he incurred, were necessary and reasonable due to the improper and frivolous conduct of Attorney Hillyer, CHLO, and the Cousins. Via Findings of Fact/Conclusions of Law/Judgment Entry filed September 2, 2015, the trial court granted Bear attorney fees

in the amount of $16,609.77, against Attorney Brett Hillyer for a violation of Civ. R. 11, and attorney fees in the amount of $8,304.83, against the Cousins pursuant to R.C. 2323.51.

**{¶17}** It is from the May 13, 2015 Findings of Fact/Conclusions of Law/Judgment Entry and the September 2, 2015 Findings of Fact/Conclusions of Law/Judgment Entry the Cousins appeal in Guernsey App. No. 15 CA 000017, raising the following assignments of error:

**{¶18}** "I. THE TRIAL COURT ERRED IN GRANTING JUDGMENT IN FAVOR OF APPELLEE ON COUNT I, DECLARATORY JUDGMENT, IN DETERMINING SUFFICIENT EVIDENCE OF PART PERFORMANCE TO ENFORCE AN ALLEGED ORAL CONTRACT FOR THE SALE OF LAND CONTRARY TO O.R.C. 1335.04, THE STATUTE OF FRAUDS.

**{¶19}** "II. THE TRIAL COURT ERRED BY ISSUING A CONSTRUCTIVE TRUST AS THE ALLEGED ORAL AGREEMENT SHOULD HAVE BEEN DEEMED UNENFORCEABLE UNDER O.R. 1335.04, THE STATUTE OF FRAUDS.

**{¶20}** "III. THE TRIAL COURT ERRED IN ADMITTING AN OFFER OF COMPROMISE OR SETTLEMENT INTO EVIDENCE.

**{¶21}** "IV. THE TRIAL COURT ERRED BY AWARDING ATTORNEY FEES PURSUANT TO CIV. R. 11 WHEN THE PLEADINGS FILED BY APPELLANTS WERE SUPPORTED AND NOT FILED FOR PURPOSES OF DELAY.

**{¶22}** "V. THE TRIAL COURT ERRED BY AWARDING ATTORNEY FEES PURSUANT TO R.C. 2323.51 AS THE ACTIONS OF APPELLANTS DID NOT RISE TO THE LEVEL OF FRIVOLOUS CONDUCT."

**{¶23}** It is from the September 2, 2015 Findings of Fact/Conclusions of Law/Judgment Entry Bear appeals in Guernsey App. No. 15 CA 000024, assigning as error:

**{¶24}** "I. THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO SANCTION THE LAW FIRM OF CONNOLLY, HILLYER, LINDSAY, & ONG UNDER R.C. 2323.51 AND THE COURT'S INHERENT POWER.

**{¶25}** "II. THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO AWARD ALL OF THE ATTORNEY FEES INCURRED BY APPELLANT AGAINST BRETT H. HILLYER AND HIS FIRM, CONNOLLY, HILLYER, LINDSAY, & ONG.

**{¶26}** "III. THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO AWARD ALL OF THE ATTORNEY FEES INCURRED BY APPELLANT AGAINST THE DEFENDANTS-APPELLEES MARCIA TROYER, BARBARA DOUTHITT, AND GLORIA BEAR.

**{¶27}** "III. THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO AWARD ALL OF THE ATTORNEY FEES INCURRED BY APPELLANT FOLLOWING APPELLANT'S FILING OF HIS MOTION FOR PARTIAL SUMMARY JUDGMENT.

**{¶28}** "IV. THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO AWARD ANY EXPENSES TO APPELLANT IN DEFENDING AGAINST IMPROPER AND FRIVOLOUS CONDUCT."

Guernsey App. No. 15 CA 000017

I

{¶29} In their first assignment of error, the Cousins contend the trial court erred in granting declaratory judgment in favor of Bear upon a finding of the agreement between Bear and Charlene Bear was enforceable based upon the doctrine of partial performance.

{¶30} As an appellate court, we are not the trier of fact; instead, our role is to determine whether there is relevant, competent, and credible evidence upon which the factfinder could base his or her judgment. *Tennant v. Martin–Auer,* 188 Ohio App.3d 768, 936 N.E.2d 1013, 2010–Ohio–3489, ¶ 16, citing *Cross Truck v. Jeffries,* 5th Dist. Stark No. CA–5758, 1982 WL 2911. A reviewing court, in addressing a civil manifest weight challenge, must determine whether the finder of fact, in resolving conflicts in the evidence, clearly lost his or her way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *See Hunter v. Green,* Coshocton App.No. 12–CA–2, 2012–Ohio–5801, 2012 WL 6094172, ¶ 25.

{¶31} In Ohio, agreements for the sale of real estate come within the statute of frauds and must be in writing and signed by the party to be charged. *See Shimko v. Marks* (5th Dist. 1993), 91 Ohio App.3d 458, 461, 632 N.E.2d 990.  R.C. 1335.05, which codifies the statute of frauds, provides:

> No action shall be brought whereby to charge the defendant * * *
> upon a contract for sale of lands, tenements, or hereditaments, or interest
> in or concerning them, or upon an agreement that is not to be performed
> within one year from the making thereof; unless the agreement upon which
> such action is brought, or some memorandum or note thereof, is in writing

and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized.

**{¶32}** "However, part performance of an oral contract for the sale of real estate can be sufficient to remove the contract from the operation of the statute." *Delfino v. Paul Davies Chevrolet, Inc.* (1965), 2 Ohio St.2d 282, 287, 209 N.E.2d 194.

**{¶33}** In order to establish part performance, a party must show: 1) evidence of a change in who possesses the land; 2) payment of all or part of the consideration for the land; and 3) improvements, alterations, or repairs on the land. *Monea v. Lanci,* 5th Dist. Stark No.2011CA00050, 2011–Ohio–6377, ¶ 52, citing *Tier v. Singrey* (1951), 154 Ohio St. 521, 526, 97 N.E.2d 20. The party asserting part performance must have undertaken acts that "changed his position to his detriment and make it impossible or impractical to place the parties in status quo." *Delfino*, supra. Generally, in cases involving real estate contracts, courts require acts such as possession, payment of consideration, and improvements on the land in order to find part performance of the contract. *Geiger v. Geiger* (Nov. 16, 1993), Montgomery App. No. 13841.

**{¶34}** In its May 13, 2015 Findings of Fact/Conclusions of Law/Judgment Entry, the trial court found Bear "established by the evidence presented sufficient part performance to remove the contract from the statute of frauds." *Id.* at 5. We agree. The evidence established Bear maintained continuous possession of the property before and after purchasing the land from Charlene Bear. Bear paid $8,600.00, to Charlene Bear in consideration for the property on October 26, 1990. Bear paid the real estate taxes on the property for over 25 years. He made improvements and/or alterations on the land. Specifically, Bear cleared trees and brush, installed a gate to keep out trespassers, and

erected a fence. He also built a cabin on the property. The Cousins never contested or challenged Bear's possession of the property. Further, the Cousins never asserted an interest in the property until Bear requested they execute quitclaim deeds in 2013.

{¶35} Based upon the foregoing, we overrule the Cousins' first assignment of error.

II

{¶36} In their second assignment of error, the Cousins maintain the trial court erred in issuing a constructive trust. Specifically, the Cousins submit the agreement between Bear and Charlene Bear should not have been removed from the statute of frauds.

{¶37} Having found in Assignment of Error I the trial court did not err in determining there was part performance sufficient to remove the agreement between Bear and Charlene Bear from the operation of the statute of frauds, we find it unnecessary to analyze the Cousins' second assignment of error based upon the two-issue rule.

{¶38} The Cousins' second assignment of error is overruled as moot.

III

{¶39} In their third assignment of error, the Cousins argue the trial court erred in admitting an offer of compromise or settlement into evidence.

{¶40} During the trial, Bear presented Plaintiff's Trial Exhibit 10, a correspondence from Attorney Hillyer to Attorneys Bennett and Chappelear, dated October 11, 2013. In this correspondence, which is set forth in our Statement of the Case and Facts, supra, Attorney Hillyer advised Attorneys Bennett and Chappelear the Cousins would be "happy to sign over their ¼ interest in the real estate" if the matter was not about mineral rights.

The Cousins contend the correspondence was an offer of compromise or settlement and the trial court improperly admitted it into evidence.  The trial court admitted the letter as an admission against interest.

**{¶41}** While we view the correspondence more in the nature of an offer or compromise or settlement than an admission against interest we find any error in its admission to have been harmless given the other evidence supporting the trial court's decision.

**{¶42}**  The Cousins' third assignment of error is overruled.

IV

**{¶43}**  In their fourth assignment of error, the Cousins assert the trial court erred in awarding attorney fees pursuant to Civ. R. 11 as the pleadings they filed were supported and were not filed for purposes of delay.

**{¶44}**  Civ.R. 11 governs the signing of motions, pleadings and other documents and states, in pertinent part:

**{¶45}**  "The signature of an attorney or pro se party constitutes a certificate by the attorney or party that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay. If a document is not signed or is signed with intent to defeat the purpose of this rule, it may be stricken as sham and false and the action may proceed as though the document had not been served. For a willful violation of this rule, an attorney or pro se party, upon motion of a party or upon the court's own motion, may be subjected to appropriate action, including an award to the opposing party of

expenses and reasonable attorney fees incurred in bringing any motion under this rule. Similar action may be taken if scandalous or indecent matter is inserted."

**{¶46}** In ruling on a motion for sanctions made pursuant to Civ.R. 11, a court "must consider whether the attorney signing the document (1) has read the pleading, (2) harbors good grounds to support it to the best of his or her knowledge, information, and belief, and (3) did not file it for purposes of delay." *Ceol v. Zion Indus. Inc.* (9th Dist.1992), 81 Ohio App.3d 286, 290. Civ.R. 11 expressly requires the conduct of the attorney or pro se party must be willful; mere negligence is insufficient. *Riston v. Butler* (2002), 149 Ohio App.3d 390, 777 N.E.2d 857, 2002-Ohio-2308, at ¶ 9.

**{¶47}** In its September 2, 2015 Findings of Fact/Conclusions of Law/Judgment Entry, the trial court found Attorney Brett Hillyer never spoke with anyone other than the Cousins and Attorney Douglas Frautschy, who was Charlene Bear's estate attorney in 2003, and who was not privy to any information regarding the status of the property in 1990. The trial court also found Attorney Hillyer never attempted to talk to Cynthia Bear Bixler, and never investigated the history concerning the payment of taxes on the property. The trial court further found Attorney Hillyer "testified that he based pleadings on what [the Cousins] told him for the statements made in opposition to Plaintiff's Motion for Partial Summary Judgment." September 2, 2015 Findings of Fact/Conclusions of Law/Judgment Entry at p. 5. Based upon those findings, the trial court determined "Attorney Hillyer did not have a factual basis for the allegations made in [the Cousins'] opposition to Plaintiff's Motion for Partial Summary Judgment." *Id.*

**{¶48}** We find the reasons set forth by the trial court do not provide sufficient grounds demonstrating a willful violation of the rule sufficient to justify the imposition of

sanctions against Attorney Hillyer. In hindsight, it is clear Attorney Hillyer could have done more to verify [or discredit] the information he obtained from his clients. However, we find it is was not unreasonable for Attorney Hillyer to rely upon information he received from the Cousins when he had no reason to question the accuracy of that information. "An attorney may rely on a client's recitation of the facts in any case or controversy, unless they are plainly devoid of truth." *Tomb & Assoc., Inc. v. Wagner* (1992), 82 Ohio App.3d 363, 368, 612 N.E.2d 468.

{¶49} The Cousins' fourth assignment of error is sustained as to the award of attorney fees against Attorney Brett Hillyer.

V

{¶50} In their fifth assignment of error, the Cousins submit the trial court erred in awarding attorney fees against them pursuant to R.C. 2323.51 as their actions did not rise to the level of frivolous conduct.

{¶51} R.C. 2323.51 provides a court may award court costs, reasonable attorney fees, and other reasonable expenses incurred in connection with the civil action or appeal to any party to the civil action or appeal who was adversely affected by frivolous conduct.

{¶52} R.C. 2323.51(A)(2)(a) defines "frivolous conduct", in relevant part, as follows:

{¶53} "(iii) The conduct consists of allegations or other factual contentions that have no evidentiary support or, if specifically identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

**{¶54}** "(iv) The conduct consists of denials or factual contentions that are not warranted by the evidence or, if specifically so identified, are not reasonably based on a lack of information or belief."

**{¶55}** A motion for sanctions brought under R.C. 2323.51 requires a three-step analysis by the trial court. The trial court must determine (1) whether the party engaged in frivolous conduct, (2) if the conduct was frivolous, whether any party was adversely affected by it and (3) if an award is to be made, the amount of the award. R.C. 2323.51(B)(2)(a).

**{¶56}** The question of what constitutes frivolous conduct may be either a factual determination, or a legal determination. *Pingue v. Pingue,* 5th Dist. Delaware No. 06–CAE–10–0077, 2007–Ohio–4818, ¶ 20 citing *Wiltberger v. Davis,* 110 Ohio App.3d 46, 673 N.E.2d 628 (1996). A determination the conduct is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law requires a legal analysis. *Lable & Co. v. Flowers,* 104 Ohio App.3d 227, 233, 661 N.E.2d 782 (9th Dist.1995). With respect to purely legal issues, we follow a de novo standard of review and need not defer to the judgment of the trial court. *Wiltberger,* supra, at 51–52, 673 N.E.2d 628. However, we do find some degree of deference appropriate in reviewing a trial court's factual determinations and will not disturb such factual determinations where the record contains competent, credible evidence to support such findings. *Id.*

**{¶57}** If the reviewing court finds the trial court's finding of frivolous conduct is substantiated, the decision to award attorney fees as a sanction for that conduct rests within the trial court's sound discretion. *Burchett v. Larkin,* 2011–Ohio–684, ¶ 22. A trial

court's decision to award attorney fees for frivolous conduct under R.C. 2323.51 will not be reversed absent an abuse of discretion. *Id.*

**{¶58}** In its September 2, 2015 Findings of Fact/Conclusions of Law/Judgment Entry, the trial court noted the Cousins set forth three statements in their response to Bear's motion for partial summary judgment:

a. [The Cousins], as well as the decedent's former attorney, all knew intimately of Charlene M. Bear's affairs. All of these parties are ready, willing and able to testify at trial that the decedent did not want to sell the property, nor did she ever seek to sell the property;

b. [The Cousins] deny that they never paid property tax on the property. The property taxes were paid from time to time by a sister. [Bear] used the property as his own most of the time so [the Cousins] did not believe that much property tax would be owed on their behalf;

c. [The Cousins] deny that they never created any improvements or performed any maintenance on the property during the time at issue. *Id.* at 2.

**{¶59}** The trial court found, "All of the statements were unsupported by the evidence at trial." *Id.* After detailing the testimony presented at trial which contradicted the Cousins' statements, the trial court concluded the Cousins' conduct consisted of allegations or other factual contentions that had no evidentiary support or, if specifically identified, were not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery, or, if specifically so identified, were not reasonably

based on a lack of information or belief. *Id.* at 3. Having so found, the trial court awarded attorney fees in the amount of $8,304.83, against the Cousins pursuant to R.C. 2323.51.

**{¶60}** We have reviewed the entire record in this matter and the decision of the trial court. We do not find the trial court abused its discretion in awarding attorney fees against the Cousins based upon their frivolous conduct as outlined by the trial court.

**{¶61}** The Cousins' fifth assignment of error is overruled.

Guernsey App. No. 15 CA 000024

I, II

**{¶62}** In his first assignment of error, Bear contends the trial court abused its discretion in failing to sanction the law firm of Connolly, Hillyer, Lindsay & Ong pursuant to R.C. 2323.51 and the court's inherent power. In his second assignment of error, Bear asserts the trial court abused its discretion in failing to award all of the attorney fees he incurred against Attorney Hillyer and his firm, Connolly, Hillyer, Lindsay & Ong.

**{¶63}** Based upon our disposition of the Cousins' fourth assignment of error in Guernsey App. No. 15 CA 000017, we overrule Bear's first and second assignments of error.

III, IV

**{¶64}** In his third assignment of error, Bear maintains the trial court abused its discretion in failing to award all of the attorney fees he incurred against the Cousins. In his fourth assignment of error, Bear argues the trial court abused its discretion in failing to award all of the attorney's fees incurred he incurred following his filing of his motion for partial summary judgment.

**{¶65}** A decision on whether to award sanctions under R.C. 2323.51 will not be reversed absent an abuse of discretion. *State ex rel. Striker v. Cline,* 130 Ohio St.3d 214, 2011-Ohio-5350, 957 N.E.2d 19, ¶ 11, citing *Ron Scheiderer & Assocs. v. London* (1998)*,* 81 Ohio St.3d 94, 98, 689 N.E.2d 552. The award of attorney fees may be equal to *or less than*, but may not exceed, the attorney fees that were reasonably incurred by the aggrieved party. R.C. 2323.51(B)(3).

**{¶66}** After granting Bear's motion for attorney fees pursuant to R.C. 2323.51 and Civ.R. 11, the trial court conducted an evidentiary hearing to determine the reasonableness and necessity of the attorney fees requested by Bear. The trial court found the total amount of attorney fees incurred and sought by Bear in connection with the litigation was $126,081.00, and the total amount of costs incurred and sought was $2,884.32. The trial court also found Attorney Stephen Chappelear had 38 years of legal experience and billed at an hourly rate of $460 in 2013, $475 in 2014, and $485 in 2015. The trial court noted, "the hourly rate charged by [Attorney Chappelear] is one of the highest hourly rates which have been before this Court". September 2, 2015 Findings of Fact/Conclusions of Law/Judgment Entry at p.4. In addition, the trial court indicated "as a matter of law that only the fees that directly related to [Bear's] Motion for Partial Summary Judgment, the Trial to the Bench, and [Bear's] Motion for Sanctions shall be granted." *Id.*

**{¶67}** We find the trial court did not abuse its discretion in failing to award all of the attorney fees Bear incurred or all of the attorney's fees Bear incurred following his filing of his motion for partial summary judgment. An award of attorney fees made

pursuant to R.C. 2323.51 is a sanction, a penalty.     A trial court has discretion to determine the amount of attorney fees to award as that sanction.

**{¶68}** Bear's third and fourth assignments of error are overruled.

V

**{¶69}** In his final assignment of error, Bear claims the trial court abused its discretion in failing to award any expenses he incurred in defending against the Cousins' frivolous and improper conduct.

**{¶70}** Again, this assignment of error is reviewed under an abuse of discretion standard.

**{¶71}** R.C. 2323.51(B)(1) provides: "Subject to divisions (B)(2) and (3), (C), and (D) of this section and except as otherwise provided in division (E)(2)(b) of section 101.15 or division (I)(2)(b) of section 121.22 of the Revised Code, at any time not more than thirty days after the entry of final judgment in a civil action or appeal, any party adversely affected by frivolous conduct may file a motion for an award of court costs, reasonable attorney's fees, and other reasonable expenses incurred in connection with the civil action or appeal. The court may assess and make an award to any party to the civil action or appeal who was adversely affected by frivolous conduct, as provided in division (B)(4) of this section."

**{¶72}** We find the trial court did not abuse its discretion in failing to award the expenses Bear incurred in defending the action. The fact R.C. 2323.51 grants a trial court the authority to award "other reasonable expenses" to any party affected by frivolous conduct does not equate to a finding of an abuse of discretion if a trial court determines not to award such expenses.

{¶73}  Bear's fifth assignment of error is overruled.

{¶74}  The judgment of the Guernsey County Court of Common Pleas in Guernsey App. No. 15 CA 000017 is affirmed in part, and vacated in part.

{¶75}  The judgment of the Guernsey County Court of Common Pleas in Guernsey App. No. 15 CA 000024 is affirmed.


By: Hoffman, J.

Gwin, P.J.  and

Baldwin, J. concur